IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JEROME ROSS and | ) | |
| ERNESTINE ROSS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action Number: 2:07-cv-792-WKW |
| | ) | |
| PROGRESSIVE SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF PROGRESSIVE SPECIALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Comes now the defendant, Progressive Specialty Insurance Company ("Progressive"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and submits this memorandum of law in support of its motion for summary judgment. Progressive is entitled to summary judgment on the plaintiff's bad faith claims in his complaint.

First, the plaintiff's claim for bad faith cannot lie because the plaintiff's damages are in dispute and, therefore, the plaintiff's claim is not ripe for adjudication. Secondly, even if the plaintiff's claim is ripe for adjudication, Progressive has arguable and debatable reasons for not paying its policy limits for its underinsured motorist coverage. Progressive is not liable for bad faith failure to investigate because it performed a reasonable and sufficient investigation into this accident. Finally, the plaintiff cannot satisfy the essential elements of fraud, misrepresentation, negligence, wantonness, or an outrage claim. Therefore, all these claims are due to be dismissed.

I.    **Summary Judgment Standard**.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "as always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id*. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleading and by his [own] affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-

movant and must draw all justiciable inferences from the evidence in the non-movant's party favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See, Fed. R. Civ. P. 56(c).

## II.    <u>Narrative Statement of Undisputed Facts</u>.

The plaintiff, Jerome Ross ("Ross"), was involved in a motor vehicle accident on or about June 21, 2005. (See, plaintiff's complaint, p. 2, ¶ 6, attached as exhibit "A"). Ross was employed by Tony Lester d/b/a Lester Logging ("Lester") at the time of this accident. *Id.* at p. 1, ¶ 3.

Progressive issued a policy of automobile insurance to Lester. The policy included uninsured/underinsured motorist coverage. *Id.* at p. 1, ¶4. Progressive also issued a policy of insurance to the tortfeasor, Brandon Neal ("Neal"). *Id.* at p. 2, ¶ 12. Progressive paid its policy limit in the amount of $20,000 under Neal's policy. *Id.*

Ross was involved in a subsequent accident eight days after the accident with Neal. (Affidavit of Larry Lackey, ¶ 7 attached as exhibit "B"). It is unclear what treatments and injuries were proximately caused by the accident with Neal. *Id.* at ¶8. It is unclear if the plaintiff will require future surgeries as a result of this accident. *Id.* Ross' physician's depositions have not been taken. *Id.* Ross' medical records appear incomplete at this time. *Id.*

3

Progressive's representatives conducted a reasonable investigation into Ross' underinsured motorist claim.  *Id.* at ¶ 8.   Progressive's investigation was subject to a cognitive evaluation and review. *Id.* at ¶ 9.

Progressive's representative offered the amount of $10,200 in settlement of Ross' underinsured motorist claim on May 29, 2007. *Id.* at ¶6.  (See also, exhibit "B" attached). The plaintiff filed this lawsuit alleging that he was entitled to uninsured motorist benefits through Progressive's policy issued to Lester.   Additionally, he asserted claims against Progressive for bad faith, fraud, misrepresentation, negligence, wantonness, and outrage. (See, plaintiff's complaint, p. 4, ¶ 22 - 29).

**III.    Legal Argument.**

**A.    Progressive is not liable for "normal" bad faith failure to pay because it had arguable and debatable reasons for not paying its policy limit for underinsured motorist coverage to the plaintiff.**

In *Morton v. Allstate*, 46 So. 2d 1263 (Ala. 1986) the court held:

> in the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and thus entitled to recover as a matter of law.

*Id.* (quoting *National Savings Life Insurance C. v. Dutton*, 419 So. 2d 1357 (Ala. 1982).

Alabama courts have also held that:

> The plaintiff asserting a bad-faith claim bears a heavy burden. **To establish a prima facie case of bad-faith failure to pay an insurance claim, a plaintiff must show that the insurer's decision not to pay was without any ground for dispute; in**

4

> **other words, the plaintiff must demonstrate that the insurer
> had no legal or factual defense to the claim. The insured
> must eliminate any arguable reason propounded by the
> insurer for refusing to pay the claim.** A finding of bad faith
> based upon rejection of the insurer's legal argument should be
> reserved for extreme cases. The right of an insurer to deny a
> claim on any arguable legal issue is to be as zealously guarded
> as the right to decline benefits on any debatable issue of fact, the
> test of reasonableness being the same.

*Shelter Mutual Insurance Company v. Barton*, 822 So. 2d 1149, 1154 (Ala. 2001)(citations

omitted)(emphasis added). In the context of a UIM bad faith claim, the Alabama Supreme

Court has held that the insurer is entitled to dismissal of the bad faith claim until the

plaintiff's damages are fixed and not in controversy. *Ex parte Safeway Insurance Company*

*of Alabama, Inc.* 2008 WL 542039, 8 (Ala.).

In *Ex parte Safeway*, an automobile accident victim filed a lawsuit against the driver

and his uninsured motorist carrier to recover for a bad faith failure to pay the claim. *Id.* at

1. The trial court denied Safeway's motion to dismiss the bad faith claim. *Id.*

Safeway's assistant claims manager, Richard Mizell ("Mizell"), filed an affidavit in

support of Safeway's motion to dismiss. *Id.* at 2. Safeway's assistant claims manager noted

in his affidavit that the insured had not submitted evidence establishing that she was entitled

to recover the $60,000 uninsured motorist limits and that the extent of the damages to which

she is entitled to recover from the uninsured motorist are unknown. *Id.* at 3. Safeway

argued that the plaintiff's damages were contested and unliquidated and, thus, a bad faith

claim was premature. *Id.* at 4.

The court concluded:

> Safeway has established a clear legal right to a writ of mandamus because Safeway presented unrefuted evidence indicating that the damages are in dispute and, in accordance with *Pontius*, Galvin's bad faith claim, as a matter of law, is not ripe; consequently, the trial court does not have subject matter jurisdiction over the claim. Safeway presented evidence to the trial court in the form of an affidavit from Mizell indicating that the damages were not fixed but were in controversy . . .

*Id.* at 8.

The court reasoned that there could be no bad faith action based on conduct arising before the uninsured motorist's liability is established and damages are fixed; therefore, there could be no action based on the tort of bad faith based on conduct arising prior to that time, only for subsequent bad faith conduct. *Id.* at 8. (citing, *Pontius v. State Farm Mutual Automobile Insurance Co.*, 915 So. 2d 557, 565 (Ala. 2005); *(quoting, LeFevre v. Westbury*, 590 So. 2d 154, 159 (Ala. 1991)).

Similarly, in this case, the amount of the plaintiff's damages are not fixed but are in controversy. The plaintiff was involved in a subsequent accident eight days after this accident. (Affidavit of Larry Lackey, ¶7). It is unclear what treatments and injuries were proximately caused by this accident. <u>Id</u>. at 8. It is unclear if any further surgeries will be performed on the plaintiff as a result of this accident. *Id.* Ross' physician's deposition has not been taken. *Id.* Ross' medical records appear incomplete at this time. *Id.*

Progressive has requested a complete copy of a plaintiff's medical records; however, no medical records have been produced. (See, Progressive's request for production, request number 1 and 2 attached as exhibit "C"). Progressive also issued interrogatories to the plaintiff requesting this information. (See, Progressive's interrogatories, numbers 6 and 7, attached as exhibit "D"). Clearly, the plaintiff's bad faith claim against Progressive is not ripe for adjudication until the plaintiff's damages are fixed.

Moreover, Progressive previously paid the plaintiff the amount of $20,000 which represented its liability limit for the tortfeasor, Brandon Neal ("Neal"). (Affidavit of Larry Lackey, ¶ 5). Progressive's policy limit for its underinsured motorist coverage is in the amount of $40,000. *Id*. at 3. (See, Progressive's certified declarations page and policy attached as exhibit "E"). The plaintiff's medical bills have been paid through Lester Logging's worker's compensation carrier. Lester Logging's worker's compensation carrier is not asserting a lien against the UIM benefits available to the plaintiff. (See, correspondence from Lester Logging's insurance carrier's attorney attached as exhibit "F").

Once Progressive has been forwarded the complete medical records and bills on the plaintiff, it representatives will be able to fully evaluate this claim. Notwithstanding, Progressive attempted to settle the plaintiff's UIM claim based on the medical records and bills it had at that time for the amount of $10,200 on May 29, 2007 prior to the lawsuit being filed. (See, Progressive's correspondence attached as exhibit "G").

7

Clearly, Progressive could not have committed bad faith when it has not been able to review all of the plaintiff's medical records and bills to determine the extent of the plaintiff's medical treatment.

**B.     Progressive is not liable for "abnormal" bad faith because the plaintiff cannot demonstrate that it intentionally failed to properly investigate his claim to determine whether there was a debatable reason to deny the claim.**

Alabama courts have held that where a plaintiff cannot prove normal bad faith as discussed above, an insurer can still be liable for bad faith if the plaintiff can prove abnormal bad faith. Abnormal bad-faith is defined as, "the **intentional** failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." National Security Fire & Casualty v. Bowen, 417 So. 2d 179 (1982)(emphasis added).

In United States Automobile Association v. Hobbs, 858 So. 2d 966, 974 (Ala. Civ. App. 2003) (citing State Farm Fire & Casualty Co. v. Slade, 747 So. 2d 293 (Ala. 1993)) the court explained that, "To recover under a theory of an "abnormal" case, the plaintiff must show "(1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim."

The plaintiff simply cannot demonstrate that Progressive intentionally or recklessly failed to properly investigate his claim. Progressive requested the plaintiff's medical records from his attorney. (See, affidavit of Larry Lackey, ¶ 9). Progressive's representative reviewed the accident report. *Id*. The investigation was subject to a cognitive review. *Id*.

8

Progressive's attorney has also requested through interrogatories and a request for production of documents all of the plaintiff's medical records and bills. The plaintiff has failed to produce those documents to Progressive's attorney. Therefore, the plaintiff's condition is still in controversy and his damages are not fixed. Notwithstanding, Progressive made a settlement offer to the plaintiff in the amount of $10,200 in settlement of this case based on the medical records it had been forwarded by the plaintiff's attorney.

Clearly, Progressive has a legitimate and arguable reason for not paying its UIM policy limit in this case. It did not fail to properly investigate the claim. It has been subjected to a cognitive review.

Finally, the plaintiffs cannot prove that Progressive breached the contract of insurance when it refused to pay the claim, as required under the second prong of the test stated by the court in *United States Automobile Association v. Hobbs*, *supra*. As discussed above, Progressive was not required to pay its policy limits until the plaintiff's damages were no longer in controversy and were fixed. In this case, the plaintiff's damages are still not fixed and are in controversy. Therefore, the plaintiff cannot meet the requirement the second element of abnormal bad faith. As such, the plaintiff's claim for bad faith is due to be dismissed.

**C.    The plaintiff's claims that Progressive negligently, wantonly, fraudulently, and outrageously refused to settle his claim are due to be dismissed because the plaintiff has not produced any evidence of any of those claims on the part of Progressive.**

The Alabama Supreme Court has clearly stated the elements of actionable fraud based on the misrepresentation. These are: (1) a duty to speak the truth; (2) a false representation of a material fact made intentionally, recklessly, or innocently; (3) action by the plaintiff in reliance upon the false representation; and (4) damage approximately resulting from the false representation. *Salter v. Alfa Insurance Co.*, 561 So. 2d 1050. The plaintiff has not produced any evidence to satisfy any of these elements of a claim for fraud.

As discussed above, Progressive had favorable grounds for not paying the plaintiff its limit for underinsured motorist coverage. Notwithstanding, Progressive offered the plaintiff $10,200 in settlement of his UIM claim. It is Progressive's right to investigate the plaintiff's medical condition and determine if the plaintiff's damages are fixed before it pays its policy limit.

In this case, the plaintiff's damages are still in controversy and are not fixed. Here, the plaintiffs have not presented any evidence that Progressive's representatives acted negligently, wantonly, fraudulently, or outrageously in handling his UIM claim. Progressive's representatives conducted an investigation which included a review of the plaintiff's medical bills and the accident report. Further, the plaintiff has already been paid the amount of $20,000 under the Progressive policy issued to Neal. Since the plaintiff's

10

damages are not fixed, Progressive is not required to tender its policy limit to the plaintiff. As such, the plaintiff's claim for negligence, wantonness, fraud, and outrage are due to be dismissed.

IV.    **Conclusion**.

It is clear from the case law that as long as plaintiff's damages are not fixed but are in controversy, then the bad faith claim against Progressive is due to be dismissed. The affidavit of Larry Lackey clearly shows that Progressive has properly investigated this claim and it has been subject to a cognitive review. Further, all of the plaintiff's medical bills and records have not been forwarded to Progressive for its evaluation. Therefore, the plaintiff's damages are not fixed. Consequently, the plaintiff's claims for bad faith, negligence, wantonness, fraud, and outrage are due to be dismissed.

/s/ R. Larry Bradford
R. Larry Bradford, Attorney for Defendant, Progressive Specialty Insurance Company
Attorney Bar Code: ASB-8038-F64R


/s/ Shane T. Sears
Shane T. Sears, Attorney for Defendant, Progressive Specialty Insurance Company
Attorney Bar Code: ASB-5531-R68S

OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road, Suite 100
Birmingham, Alabama 35216

11

(205) 871-7733
lbradford@bradfordsears.com
ssears@bradfordsears.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this the __25th__ day of March, 2008 filed a copy of the foregoing to all attorneys of record by filing same electronically and/or placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

Jon M. Folmar, Esq.
Law Office of Jon M. Folmar
P.O. Box 642
Laverne, AL 36049


/s/ Shane T. Sears
OF COUNSEL

12

# EXHIBIT A



IN THE CIRCUIT COURT FOR PIKE COUNTY, ALABAMA

JEROME ROSS and ERNESTINE ROSS,    )
                                    (
    Plaintiffs                       )
                                    (
vs.                                 )        CASE NO: CV-2007-_____
                                    (
TONY LESTER D/B/A LESTER LOGGING    )
and PROGRESSIVE SPECIALITY          (
INSURANCE COMPANY,                  )
                                    (
and                                 )
                                    (
FICTITIOUS DEFENDANTS               )
A, B, C, WHETHER ONE OR MORE,       (
                                    )
    Defendants                       (

---

## COMPLAINT

---

## PARTIES

1.    The Plaintiff, Jerome Ross, is an adult resident citizen of Pike County, Alabama, and at all times related herein was an employee of the Defendant, Tony Lester D/B/A Lester Logging, Goshen Alabama.

2.    Ernestine Ross is the spouse of Jerome Ross and is an adult resident citizen of Pike County, Alabama.

3.    The Defendant, Tony Lester D/B/A Lester Logging (hereinafter Lester) at all times hereto was the employer of Jerome Ross and was doing business in Pike County, Alabama.

4.    The Defendant, Progressive Speciality Insurance Company, is the insurance company that insured the Defendant, Tony Lester's company vehicles. Said insurance included under-insured motorist coverage and medical coverage.



EXHIBIT
A

5.    Fictitious Defendants A, B, C, is that person or entity that aided or contributed to, in any
      way, the damages or injuries suffered by the Plaintiff, Jerome Ross.

### FACTS

6.    On or about June 21, 2005, the Plaintiff, while under the employment of the Defendant,
      Lester Logging, was traveling on U.S. Highway 231 in Pike County, Alabama, when his
      vehicle was struck by another vehicle driven by Brandon Cavottes Neal.

7.    As a direct result and proximate consequence of the traffic accident, the Plaintiff suffered
      injuries and damages. Soon after the accident he became lame and sore, suffered pain in
      his back, shoulders, arms, and lower extremities. The Plaintiff undertook medical
      treatment for his injuries and has continued to do so to date.

8.    While the Plaintiff did return to work, his functions were limited because of his extreme
      pain. The Plaintiff took pain medication and drank alcoholic beverages because of the
      pain in attempt to cope.

9.    The Defendant, Lester Logging, eventually terminated the Plaintiff's employment because
      of his alcohol use and inability to work.

10.   At the time of the Plaintiff's accident, he had an average income of $16.31 per hour;
      $652.42 per week; or $2,827.17 per month while working for the Defendant Lester.

11.   Because of the Plaintiff's injuries, he has been unable to return to substantial
      employment. The Plaintiff has incurred numerous medical bills and has been informed
      that he will need one or more operations on his back in order to repair ruptured disks.

12.   The Plaintiff filed a claim against the driver and owner's insurance carrier, Progressive,
      and received policy limits as to their insured. However, the policy limits received in the
      amount of $20,000.00, does not cover all of the Plaintiff's injuries and damages nor does

it cover medical costs to date. Furthermore, the Plaintiff needs one or more costly operations on his back that have not been paid for and are estimated to exceed $40,000.00.

13. The Plaintiff was covered under the Defendant, Tony Lester's, under-insured motorist coverage at the time of the accident. Said coverage included stacking for two vehicles.

## <u>COUNT ONE</u>

14. The Plaintiff realleges and adopts all of the preceding paragraphs as if stated herein full.

15. On or about June 21, 2005, the Plaintiff was injured in an automobile accident while driving for the Defendant, Tony Lester.

16. At the time of the Plaintiff's accident, he had an average weeks wage of $652.42.

17. The Defendant had timely notice of the accident, the injuries, and disabilities the Plaintiff incurred, including pain in his back, spine, and neck and injuries thereto.

18. After the accident, the Plaintiff was required to seek medical attention and requires future surgery. He further suffers from a permanent total disability.

19. The Defendant has failed to pay any disability benefits, and has failed to pay any of the Plaintiff's necessary and reasonable medical expenses.

20. The Defendant has failed to pay all disability benefits to which the Plaintiff is entitled, and has failed to pay all reasonable and necessary medical expenses.

21. Plaintiff and Defendant are subject to the Worker's Compensation Act of the State of Alabama.

**WHEREFORE,** the Plaintiff demands judgement against the Defendant for all compensation and medical expenses to which the Plaintiff is entitled under the Worker's Compensation Act of the State of Alabama, as amended.

## COUNT TWO

22.     The Plaintiff realleges and adopts all of the preceding paragraphs as if stated herein full.

23.     On or about June 21, 2005, the Plaintiff was injured in an automobile accident while

        driving for the Defendant, Tony Lester.

24.     While driving for the Defendant, the Plaintiff was covered under two of the Defendant's

        uninsured/under-insured motorist policies. The Plaintiff settled for policy limits against

        the driver and owner's liability policies that were involved in the accident with the

        Defendant Lester's insurance companies knowledge and permission.

25.     The Plaintiff's injuries and damages far exceed the available amounts of the driver and

        owners of the other vehicle's policy limits. The Plaintiff further will require one or more

        surgeries on his back and spine that are reasonable and necessary in the future due to his

        injuries.

26.     Prior to filing suit in this case, the Plaintiff's attorney on the Plaintiff's behalf made an

        oral and written demand to the Defendant, Progressive Speciality Insurance Company, for

        all applicable policy limits of insurance available through Defendant Lester's

        uninsured/under-insured motorist coverage with Progressive.

27.     The Defendant, Progressive Speciality Insurance Company, negligently, wantonly, in bad

        faith, fraudulently, outrageously, and wrongly, failed or refused to settle the

        aforementioned claim.

28.     The Defendant, Progressive, had no just reason to deny settling the underlying claim

        within policy limits, especially in light of all previous demands made.

29.     The Defendant, Progressive, had no just or reasonable basis for denying the

        aforementioned underlying claim and further failed to conduct a reasonable investigation

into the claim before denying the same. The above action and/or inaction of the

Defendant constitutes bad faith in refusing to pay the claim and said bad faith proximately

caused the Plaintiff to suffer damages, injuries, and mental anguish as a proximate result

thereof.

**WHEREFORE,** the Plaintiff demands judgement against the Defendant in the sum of

$300,000.00 for compensatory and punitive damages, together with interest and costs of this

proceeding.

### <u>COUNT THREE</u>

30.    The Plaintiff realleges all of the preceding paragraphs as if set forth herein full.

31.    On or about June 21, 2005, the Plaintiff was injured in an automobile accident while

driving for the Defendant, Tony Lester.

32.    Fictitious Defendant(s) A, B, C, is that person or entity that aided in the actions of the

Defendant, Lester, and/or the Defendant, Progressive, whose identity is unknown at this

time, but after reasonable investigation and discovery, will be obtained. Fictitious

Defendant(s) A, B, C's actions or inactions caused or proximated the damages or injuries

to the Plaintiff in the automobile accident or investigation and claims related thereafter.

33.    Fictitious Defendant(s) A, B, C, conspired with, aided, assisted, or contributed to the

actions of the Defendant, Lester, and/or the Defendant, Progressive, and their intentional,

negligent, wanton, outrageous, fraudulent, bad faith actions proximately caused the

Plaintiff's injuries and damages.

**WHEREFORE,** the Plaintiff demands judgement against Defendant(s) A, B, C in the

amount of $300,000.00 for compensatory and punitive actions, and together with interest and

costs of this proceeding.

## COUNT FOUR

34.    The Plaintiff realleges and adopts all of the preceding paragraphs as if stated herein full.

35.    On or about June 21, 2005, the Plaintiff was injured in an automobile accident while

driving for the Defendant, Tony Lester.

36.    The Plaintiff, Ernestine Ross, is the wife of the Plaintiff, Jerome Ross.

37.    The Plaintiff, Jerome Ross, was negligently, wantonly, fraudulently, in bad faith, injured

by the Defendants.

38.    As a proximate result of the Defendant's actions, the Plaintiff, Ernestine Ross, was

caused to lose the consortium and society of her spouse, Jerome Ross, and she has further

suffered mental anguish from the same.

**WHEREFORE,** the Plaintiff demands judgement against the Defendants in the sum of

$50,000.00, plus costs.


/s/ ERNESTINE ROSS                              /s/ JEROME ROSS
**Ernestine Ross,** Plaintiff                  **Jerome Ross,** Plaintiff



/s/ JON M. FOLMAR
**Jon M Folmar (FOL007)**
Attorney for the Plaintiffs


**OF COUNSEL:**
The Law Office of Jon M. Folmar
Post Office Box 642
Luverne, Alabama 36049
Tel. (334) 335-4809

Fax (334) 335-5170
Email: folmar@troycable.net

## JURY DEMAND

The Plaintiffs demand a trail by jury on all issues so triable.

Of Counsel:

/s/ JON M. FOLMAR_____
Jon M. Folmar

## SERVICE OF PROCESS

The Defendants may be served via regular service or certified mail at the following

addresses:

Tony Lester D/B/A Lester Logging
Route 1
Goshen, Alabama
(334) 484-3060

Progressive Speciality Insurance Company
Agent for Service:
John R. Matthews, Jr.
2000 Interstate Park Drive
Suite 204
Montgomery, Alabama 36109

Of Counsel:

/s/ JON M. FOLMAR_____
Jon M. Folmar

# EXHIBIT B

STATE OF ALABAMA

JEFFERSON COUNTY

### <u>AFFIDAVIT OF LARRY LACKEY</u>

LARRY LACKEY being duly sworn, deposes and says under oath as follows:

1     My name is Larry Lackey. I am over the age of nineteen (19) years and am competent to make this affidavit.

2.    I am a claims attorney for Progressive Specialty Insurance Company ("Progressive"). This affidavit is based upon my personal knowledge and upon my review of records which were prepared and maintained in the ordinary and regular course of Progressive Specialty Insurance Company's business.

3.    Progressive issued a policy to Tony Lester d/b/a T&B Trucking on October 6, 2004 which included uninsured/underinsured motorist coverage. The uninsured/underinsured motorist limits are in the amount of $20,000 for each person and $40,000 per accident. There were two vehicles on the policy at the time of the accident.

4.    This accident occurred on June 21, 2005. Progressive's other insured, Brandon Neal ("Neal"), rear-ended a 1996 Kenworth truck being operated by the plaintiff, Jerome Ross ("Ross"), which was towing a log trailer.

5.    Ross was employed by Tony Lester d/b/a Lester Logging at the time of this accident. Progressive previously tendered its liability limit in the amount of $20,000 to Ross under the policy issued to Neal prior to this lawsuit being filed.

**EXHIBIT**

**B**

6.    Based on the medical records and bills it had at that time, Progressive offered the amount of $10,200 in settlement of Ross' underinsured motorist claim on May 29, 2007 prior to the lawsuit being filed.

7.    Ross was involved in a subsequent accident eight days after the accident with Neal.

8.    It is unclear what treatments and injuries were proximately caused by this accident.  It is unclear if any further surgeries will be performed on Ross as a result of this accident.  Ross' physician's deposition has not been taken.  Ross' medical records appear incomplete at this time.

9.    Progressive's representatives conducted a reasonable investigation concerning Ross' UIM claim including a review of Ross' medical records and bills which were obtained from his attorney.  Progressive's representatives also reviewed the accident report and contacted the tortfeasor, Neal.

10.    Progressive's investigation of Ross' UIM claim  has been subject to a cognitive evaluation and review.

_Larry Lackey_
Larry Lackey

Sworn to and subscribed before this the 25ᵗʰ day of _March_ , 2008.

_Diane N. Hunt_
Notary Public

My Commission Expires: _4-7-09_

EXHIBIT C



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JEROME ROSS and )
ERNESTINE ROSS, )
)
    Plaintiffs, )
)
v. ) Civil Action Number: 2:07-cv-792-WKW
)
PROGRESSIVE SPECIALTY )
INSURANCE COMPANY, )
)
    Defendants. )

## REQUEST FOR PRODUCTION TO PLAINTIFFS

    Comes now the defendant, Progressive Specialty Insurance Company, pursuant to

Rule 34 of the Federal Rules of Civil Procedure, and requests the plaintiffs to produce the

following documents for inspection and copying:

### DEFINITIONS

    A.    The term "documents" shall mean and include, but shall not be limited to all

originals and non-identical copies (whether by reason of alteration or of marginal notes) of

correspondence, inter-office memoranda, intra-office memoranda, reports, notes, letters,

telegrams, records or notes of telephone calls or other conversations, messages, evaluations,

notices, records of payment, canceled checks and check stubs, bank statements, agreements.

    B.    For each and every document that is claimed to be privileged: (i) identify the

document by date, author, addressor and addressee; (ii) identify the person who presently

has custody, control or possession of the original and all copies thereof; (iii) state



**EXHIBIT**
_C_

specifically each and every ground on which the claim of privilege is based; (iv) identify each person (by name, address, employer, job description or position at present) who received, or had access in the ordinary course of business to, the original and/or any copy of the document from the time the documents as originated until the present.

(1)    All hospital records from any hospital or infirmary in which the plaintiff was examined, treated, or confined prior to or subsequent to the accident made the basis of this suit.

(2)    Any and all medical reports from any doctor or infirmary in which the plaintiff was examined, treated, or confined prior to or subsequent to the accident made the basis of this suit.

(3)    All medical bills or receipts which the plaintiff contends were incurred as a result of the accident made the basis of this suit.

(4)    All bills, invoices, or receipts other than the medical bills which the plaintiff contends were incurred as a result of the accident made the basis of this suit.

(5)    All state and federal income tax returns filed by the plaintiff for the four years prior the subject accident.

(6)    All documents related to your employment, including contracts, union agreements, pay stubs, checks, and pay records.

(7)    All photographs taken of the accident scene and any photographs taken of you which are intended to depict your injuries.

(8)     All statements taken of the defendants, including notes, memorandums, or reports reflecting any such statement.

(9)     All expert reports prepared in connection with this case.

(10)    All documents related to the plaintiff's vehicle involved in the accident made the basis of this case, including any bills of sale, certificates of title, repair bills, repair estimates, subrogation receipts, insurance policies, and photographs.


R.   Larry   Bradford,   Attorney   for
Defendant,   Progressive   Specialty
Insurance Company
Attorney Bar Code: ASB-8038-F64R


OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road, Suite 100
Birmingham, Alabama 35216
(205) 871-7733
lbradford@bradfordsears.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this the _____ day of February, 2008, served a copy of the foregoing to all attorneys of record by filing same electronically and/or placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

Jon M. Folmar, Esq.
Law Office of Jon M. Folmar
P.O. Box 642
Luverne, AL 36049

_____
OF COUNSEL

# EXHIBIT D



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JEROME ROSS and )
ERNESTINE ROSS, )
                                )
      Plaintiffs, )
                                  )
v. ) Civil Action Number: 2:07-cv-792-WKW
                                  )
PROGRESSIVE SPECIALTY )
INSURANCE COMPANY, )
                                  )
      Defendants. )

## INTERROGATORIES TO PLAINTIFFS

      Comes now the defendant, Progressive Specialty Insurance Company, pursuant to Rule 33 of the Federal Rules of Civil Procedure, and propounds the following interrogatories to the plaintiffs to be answered within 30 days after the date of service:

## INSTRUCTIONS

      In answering these interrogatories, you are required to furnish all information available to you, including information in the possession of your attorney of any person acting in your or his behalf, and not merely such information as is known of your own personal knowledge. If you cannot answer any particular interrogatory or interrogatories in full, after exercising due diligence to secure the information sought, so state and answer to the extent possible, specifying your inability to answer the remainder.

      You are reminded that, under the provisions of Rule 26(e) of the Alabama Rules of Civil Procedure, you are under a duty to seasonably supplement your response with respect to any questions directly addressed to

**EXHIBIT**

_D_

(a) the identity and location of persons having knowledge of discoverable matter, and (b) the identity of each person to be called as an expert witness at trial, the subject matter on which he is expected to testify and the substance of his testimony.

You are under a duty to seasonably amend a prior response if you obtain information upon the basis of which (a) you know that the response was incorrect when made, or (b) you know that the response was incorrect when made, or (b) you know that the responses, though correct when made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance a knowing concealment.

Any such supplemental response is to be filed and served upon counsel of record for these defendants within fifteen (15) days after receipt of such information.

If a privilege is claimed as a ground for not responding in whole or in part to any request made herein, plaintiffs, shall in their responses hereto, describe the factual basis for the claim of privilege in sufficient detail so as to permit the court to adjudicate the validity of the claim.

## INTERROGATORIES

1. State the following concerning your background:

(a) your full name;

(b) your date of birth;

(c) your social security number; and

(d) your resident address for each of the last five years.

2. State in detail exactly how the accident made the basis of your lawsuit occurred, describing chronologically the events that occurred leading up to the accident, the speed and

direction of travel of any vehicles involved in the accident, your speed and direction of travel, and all circumstances that contributed to cause the accident.

3. State the names, addresses, telephone numbers of all witnesses to the accident.

4. State each fact which supports your claim that the defendant was guilty of negligence or wantonness in causing the accident.

5. State the following concerning each of your proposed expert witnesses:

(a) the full name and address of the expert;

(b) the educational background and qualifications of the expert; and

(c) the substance of the facts and opinions to which each such expert is expected to testify.

6. Itemize each medical bill and other expense which you are claiming in this lawsuit, including the name and address of the healthcare provider and the date of service.

7. State the name and address of each healthcare provider who has examined or treated you at any time during the last 15 years, including the purpose for each such treatment or hospitalization.

8. State the following concerning any prior or subsequent accidents or injuries in which you have been involved:

(a) the date and place of the accident or injury;

(b) a description of the accident or injury;

(c) the nature of the injury which you received;

(d) the name and address of each healthcare provider, including hospitals, who treated you for the accident or injury; and

(e) the amount of money, if any, which you received as compensation for your accident or injury.

9. Describe in detail the injuries which you received in this accident, including a full description of the names and addresses of each healthcare provider who has treated you for your injuries in the accident.

10. State the names and addresses of all insurance companies or other entities who have paid any money to you or on your behalf for any expenses or damages which you received as a result of the accident made the basis of this lawsuit, including the amount of the payment, the policy number under which the payment was made, and the amount of any subrogation claim.

11. State the following concerning your employment of the last 15 years:

(a) the name and address of each employer;

(b) your job description;

(c) the inclusive periods of your employment;

(d) your average weekly earnings; and

(e) the reason for the termination of any employment.

12. Itemize any lost wages or loss of business income which you are seeking in this case, including the dates that you missed from work and the amount of pay or income which you lost for each period of time that you were unable to work.

13. Describe in detail any conversations or statements which you had with the defendant concerning the accident or your injuries.

14. Describe your driving history for last 10 years, including the date and location of each moving violation and accident.

15. Describe any criminal charges which have ever been filed against you and the date and disposition of each such charge.

16. Identify each individual related to you by blood or marriage who is 19 years of age or older who is a resident of the county where your lawsuit is pending.


_R. Larry Bradford_

R. Larry Bradford, Attorney for Defendant, Progressive Specialty Insurance Company
Attorney Bar Code: ASB-8038-F64R


OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road, Suite 100
Birmingham, Alabama 35216
(205) 871-7733
lbradford@bradfordsears.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this the ___*29*___ day of February, 2008, served a copy of the foregoing to all attorneys of record by filing same electronically and/or placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

Jon M. Folmar, Esq.
Law Office of Jon M. Folmar
P.O. Box 642
Luverne, AL 36049

_____
OF COUNSEL

EXHIBIT E

**PROGRESSIVE®**

ONEAL AGENCY INC
PO DRAWER 1067
ANDALUSIA, AL 36420

**RECEIVED**

**JUL 16 2007**

PROGRESSIVE CLAIMS
BIRMINGHAM, AL

Named Insured:

TONY LESTER
DBA T & B TRUCKING
PO BOX 135
GLENWOOD, AL 36034

**Policy number: 08325285-0**
Progressive Specialty Insurance Company
March 16, 2005
Policy Period: Oct 6, 2004 - Oct 6, 2005
Page 1 of 2

**personal.progressive.com**
Make payments, check billing activity or check
status of a claim.

**334-222-3111**
**ONEAL AGENCY INC**
Contact your agent during business hours.

**800-444-4487**
For policy service and claims service,
24 hours a day, 7 days a week.

# Commercial Auto
# Insurance Coverage Summary
## This is your Declarations Page
## Your coverage has changed

Your coverage began the later of October 6, 2004 at 12:01 a.m. or at the time your application is executed on the first day of the policy period. This policy period ends on October 6, 2005 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 1050 (11-94). The contract is modified by forms 1197 (08/93), 1349 (12/96), 3098 (12/96), 3394 (09/01), 8470 (12/86), 2000A (12/96) and 4792A (01/03). The named insured organization type is a sole proprietorship.

## Policy changes effective March 14, 2005

| Premium change: | $2,198.00 |
|---|---|
| Changes: | The auto coverage schedule for this policy has changed. |

The changes shown above will not be effective prior to the time the changes were requested.

## Outline of coverage

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $6,010 |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured/Underinsured Motorist | $20,000 each person/$40,000 each accident | | 94 |
| Medical Payments | $1,000 each accident | | 36 |
| Comprehensive | | | 418 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| Collision | | | 1,230 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| **Total 12 month policy premium** | | | **$7,788** |

## Rated drivers

1. TONY LESTER
2. JOHNNY H CARPENTER
3. JEROME ROSS

CERTIFIED COPY
THIS WILL CERTIFY THAT THE
ATTACHED IS A TRUE AND COMPLETE COPY
OF THE ORIGINAL



CUSTODIAN OF RECORDS

**EXHIBIT**
**E**

Form 6489 (05/02)

Continued

## Auto coverage schedule

**1.**  **1995 KW T60**
   VIN:  1XKADB9X8SJ662754

| | Stated Amount: | $15,000 | | |
| Garaging Zip Code: | 36034 | | Radius: | 100 |

| Liability Premium | Liability | UM/UIM BI | Med Pay |
| --- | --- | --- | --- |
| | $2,411 | $47 | $18 |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | Auto Total |
| --- | --- | --- | --- | --- | --- |
| | $1,000 | $209 | $1,000 | $615 | **$3,300** |

**2.**  **NON Owned Attached Trlr ***
   VIN:  NONE

Garaging Zip Code:  36034       Radius:  100

| Liability Premium | Liability | Auto Total |
| --- | --- | --- |
| | $594 | **$594** |

**3.**  **1996 Kenworth T600**
   VIN:  J712817GL

| | Stated Amount: | $15,000 | | |
| Garaging Zip Code: | 36034 | | Radius: | 100 |

| Liability Premium | Liability | UM/UIM BI | Med Pay |
| --- | --- | --- | --- |
| | $2,411 | $47 | $18 |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | Auto Total |
| --- | --- | --- | --- | --- | --- |
| | $1,000 | $209 | $1,000 | $615 | **$3,300** |

**4.**  **NON Owned Attached Trlr ***
   VIN:  NONE

Garaging Zip Code:  36034       Radius:  100

| Liability Premium | Liability | Auto Total |
| --- | --- | --- |
| | $594 | **$594** |

* Non-Owned trailer but only while attached to a listed power unit specifically described on the declarations page

## Premium discount

| Policy | |
| --- | --- |
| 08325285-0 | Paid in Full |

*1781 297 01*





Important phone numbers on inside cover of this booklet.

# ALABAMA COMMERCIAL AUTO POLICY AGREEMENT

**PLEASE READ YOUR POLICY AGREEMENT CAREFULLY.** Provisions of this Agreement and its endorsements restrict coverage. Be certain you understand all of the coverage terms, the exclusions and your rights and duties.

This booklet contains Form No. 1050 (11-94) and a section of selected endorsements.

**All forms in the endorsement section may not pertain to your policy.** Please refer to your Declaration Page for form numbers associated with your policy. All other parts of the policy that have not been modified by an endorsement will remain unchanged.

Form No. 1781 (2/97) AL

© 1997 The Progressive Corporation. All rights reserved.

## INDEX OF POLICY PROVISIONS

|  | PAGE |
|---|---|
| **YOUR DUTIES IN CASE OF ACCIDENT OR LOSS** | |
| Notice of Accident or Loss | 9 |
| Other Duties | 9 |
| **GENERAL DEFINITIONS** | 9 |
| **ADDITIONAL PREMIUM AGREEMENT** | 14 |
| **PART I - LIABILITY TO OTHERS** | 15 |
| Coverage A - Bodily Injury | 15 |
| Coverage B - Property Damage | 15 |
| Additional Definitions | 15 |
| Additional Payments | 15 |
| Exclusions | 15 |
| Limit of Liability | 16 |
| Coverage Required by Filings | 16 |
| Other Insurance | 16 |
| **PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS** | 19 |
| Coverage C - Medical Payments | 19 |
| Additional Definitions | 19 |
| Exclusions | 20 |
| Limit of Liability | 21 |
| Other Insurance | 21 |
| **PART III - DAMAGE TO YOUR AUTO** | 22 |
| Coverage D - Comprehensive | 22 |
| Coverage E - Collision | 23 |
| Coverage F - Fire and Theft with Combined Additional Coverage (CAC) | 23 |
| Additional Definitions | 24 |
| Exclusions | 24 |
| Limit of Liability | 24 |
| No Benefit to Bailee | 25 |
| Appraisal | 25 |
| Payment of Loss | 25 |
| Other Insurance | 25 |

## WE'RE HERE FOR YOU!

Our Immediate Response ®

claims service

and 24 Hour Policy Service

are available 24 hours a day,

7 days a week.

To report a claim, call:

**1-800-274-4499**

For policy service, call:

**1-800-444-4487**

## POLICY AGREEMENT

If you pay your premium when due, we agree to insure you, based upon the warranties and representations made by you in your application, subject to all of the terms of this Policy including all applicable endorsements attached to this Policy and shown in the Declarations. The Declarations and your application are a part of this Policy.

## YOUR DUTIES IN CASE OF AN ACCIDENT OR LOSS

### Notice of Accident or Loss

In the event of an accident or loss, report it to us as soon as practicable by calling our toll-free claims reporting number 1-800-274-4499. The report should give the time, place and circumstances of the accident or loss, including the names and addresses of any injured persons and witnesses, and the license plates of the vehicles involved.

You should also notify the police within twenty-four (24) hours or as soon as practicable if:
a.   a hit-and-run auto is involved; or
b.   theft or vandalism has occurred.

All accidents or losses should be reported even if an insured person is not at fault.

### Other Duties

Any person claiming coverage under this Policy must:

1.   cooperate with and assist us in any matter concerning a claim or lawsuit;

2.   provide any sworn or written proof of loss that we require before payment of a loss;

3.   provide us with signed or recorded statements under oath as often as we may reasonably require;

| INDEX OF POLICY PROVISIONS (CONT'D) | PAGE |
|---|---|
| PART IV - GENERAL PROVISIONS | 29 |
| Policy Period | 29 |
| Changes | 29 |
| Two or More Autos Insured | 29 |
| Suit Against Us | 29 |
| Our Recovery Rights | 30 |
| Assignment | 30 |
| Waiver | 31 |
| Bankruptcy | 31 |
| Inspection and Audit | 31 |
| Fraud and Misrepresentation | 31 |
| Terms of Policy Conformed to Statutes | 32 |
| CANCELLATION OF THIS POLICY | 32 |
| NONRENEWAL OF THIS POLICY | 33 |

2. keep a record of **your** expenses for consideration in the settlement of a claim.

3. report the theft or vandalism of the **insured auto** to the police within twenty-four (24) hours of the **accident**;

4. allow **us** to inspect and appraise the **insured auto** before repair or disposal.

## GENERAL DEFINITIONS

The following words and phrases have special meaning when used in **bold** throughout this Policy and in the endorsements unless specifically modified.

1. "**We**", "**us**" and "**our**" mean the Company providing this insurance as shown in the Declarations.

2. "**You**" and "**your**" mean:

   a. if the policy is issued in the name of an individual, the person shown the Declarations as the named insured; or

   b. the organization shown in the Declarations as the named insured.

3. "**Bodily injury**" means physical injury or sickness, disease or death of any person. **Bodily injury** does not include harm, sickness, disease or death arising out of a medically defined communicable disease contracted by any person nor the exposure of such a disease by any person to any other person.

4. "**Property damage**" means damage or destruction of tangible property, including loss of its use.

5. "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads. It does not include **mobile equipment.**

3

1. promptly send **us** any and all legal papers received relating to any claim or lawsuit;

5. attend hearings and trials as **we** require;

6. submit to medical examination at **our** expense by doctors **we** select as often as **we** may reasonably require;

7. authorize **us** to obtain medical and other records which **we** deem appropriate;

8. authorize **us** access to **your** business or personal records as often as **we** deem necessary;

9. provide **us** with written notice of any legal action which such person has undertaken in regard to the **accident** for which coverage is sought;

10. assume no obligation, make no payment or incur no expense without **our** consent, except at **your** own cost;

11. convey title to and possession of the damaged, destroyed, or stolen property to **us** if **our** payment is based on a total loss or constructive total loss of the property; a constructive total loss occurs when the cost of repairs exceeds the lesser of the **actual cash value** of the damaged property immediately before the **loss**, or the limit of liability of the damaged property as indicated in the Policy.

In addition to the above, a person claiming coverage under PART III - DAMAGE TO YOUR AUTO must:

1. take reasonable steps after a **loss** to protect the **insured auto** and its equipment from further **loss**, provided that **we** shall pay reasonable expenses incurred in providing that protection, provided further that if **you** fail to do so, any further damages will not be covered under this Policy.

2

or cargo. However, self-propelled vehicles with permanently attached equipment listed below are not **mobile equipment** but will be considered **autos**:

1) Snow removal, road maintenance and street cleaning equipment.

8. **"Accident"** means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage** and arises out of the ownership, maintenance or use of **your insured auto.**

9. **"Your insured auto"** or **"insured auto"** means:

a. Any **auto** described in the Declarations or any **replacement auto.** The same coverages and limits will apply to the **replacement auto** as applied to the **auto** being replaced, until **you** notify **us. You** must, however, notify **us** within 30 days of replacement. For coverage to continue to apply. Once ownership in the original **auto** is transferred or it becomes permanently inoperable, this policy no longer applies to it.

b. Any additional **auto** of which **you** acquire ownership during the policy period provided that: 1) if the **auto** is used in **your** business, **we** must insure all other **autos you** own and that have been used in **your** business, and 2) if the **auto** is not used in **your** business, **we** must insure all other **autos you** own. The same coverages and limits will apply to the additionally acquired **auto** as apply to **your** other **autos** on the policy, except that:

6. **"Trailer"** includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

7. **"Mobile equipment"** means any of the following types of equipment, including but not limited to any attached machinery:

a. Equipment such as: Bulldozers, power shovels, cranes, rollers, booms, winches, graders, diggers, mixers, compressors, generators, drills, welders, pumps, farm implements and machinery, forklifts, shredders or other similar specialized equipment.

b. Vehicles **you** use solely on premises **you** own or rent and on accesses to public roads from these premises, unless listed in the declarations of this policy and not defined as **mobile equipment** under other parts of this definition.

c. Any vehicle designed for customary use off public roads or those which do not require licensing in the state in which **you** live or **your** business is licensed.

d. Vehicles, whether self-propelled or not, used primarily to provide mobility to permanently attached equipment including, but not limited to: Air compressors, pumps, generators, spraying, welding, cleaning, lighting, geophysical exploration and well servicing equipment, cherry pickers or other devices used to raise or lower workers, snow removal equipment, or road maintenance equipment.

e. Vehicles used primarily for purposes other than transportation of persons

it is permanently attached to **your insured auto** and **your insured auto** is in transit on a public road-way.

10. **"Replacement auto"** means any **auto** which **you** have acquired ownership during the current policy term that has taken the place of an **auto** described in the Declarations due to:

a. termination of **your** ownership of the **auto** described in the Declarations;

b. mechanical breakdown, deterioration or loss of the **auto** described in the Declarations, rendering it permanently inoperable.

11. **"Non-owned auto"** means any **auto** which is:

a. not owned by or registered to **you**, **your** nonresident spouse or a resident of the household in which **you** reside;

b. not hired, owned by or borrowed from **your** employees or members of their households; or

c. Not hired by **you** or an employee of **yours**, and if **you** are a person, not hired by a resident of the household in which **you** reside unless it's specifically listed on the policy Declarations.

12. **"Occupying"** means in, on, getting into, getting off, or getting out of.

13. **"State"** means the District of Columbia and any state, territory or possession of the United States and any province of Canada.

14. **"Relative"** means, if **you** are a person, any other person living in the household

---

1) For coverage to apply to the additional **auto** under PART I - LIABILITY TO OTHERS and PART II - EXPENSES FOR MEDICAL SERVICES TO IN-SUREDS, **you** must notify **us** within 30 days of its acquisition. If **you** have not notified **us** of an additional **auto** and an **accident** occurs within 30 days of **your** acquisition, only those coverages and limits for Parts I and II shown in **your** most current declarations will apply.

2) For coverage to apply to the additional **auto** under PART III - DAMAGE TO YOUR AUTO, **you** must have notified **us** of any **auto** prior to any **accident** or **loss**.

c. Any **non-owned auto** while **you** or an employee of **yours** is temporarily driving it as a substitute for any other **auto** described in this definition because of its withdrawal from normal use for a period of not greater than 30 days without notification to **us** due to breakdown, repair, servicing, **loss**, or destruction. Coverage for PART III - DAMAGE TO YOUR AUTO does not apply to these temporary substitute **autos**.

d. **Trailers** designed primarily for travel on public roads, even if such **trailers** are not shown in the Declarations, but only while upon a public road and connected to **your insured auto**. However, no coverage shall be provided for a **trailer** under PART III - DAMAGE TO YOUR AUTO, unless the appropriate premium has been paid for that coverage for such **trailer**.

e. **Mobile equipment**, even if not shown in the Declarations, but only if

6

in which **you** reside who is related to **you** by blood, marriage or adoption, including a ward or foster child.

15. **"Loss"** means sudden, direct and accidental destruction of, theft or damage to **your insured auto.**

16. **"Actual cash value"** means **the** amount it would cost to replace the stolen or damaged property with property of like kind and quality. In the event replacement property of like kind and quality is unavailable, allowances can be made for the difference in value between the replacement and damaged property.

17. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

8

## ADDITIONAL PREMIUM AGREEMENT

**You** acknowledge that the premium for each term of **your** Policy is determined by information in **our** possession at the inception date of the Policy period. Any change in this information during the period which would affect the rating of **your** Policy gives **us** the right to make an additional charge on a pro-rata basis. In addition, **you** have a duty to inform **us** of any such change.

1. If a premium adjustment is necessary because of an error made by **us** or **our** agent, **we** shall:

a. Notify **you** of the nature of the error and the amount of additional premium required; and

b. Offer to cancel the policy pro rata based on the original (incorrect) premium for the period for which coverage was provided, or

c. Offer to continue the policy for its full term with the correct premium plying for the entire term.

2. If the premium revision results from erroneous or incomplete information supplied by **you** or on **your** behalf, **we** shall:

a. Correct the premium or rate retroactive to the inception date of the policy; and

b. Notify **you** of the reason for the amount of the change. If **you** are not willing to pay the additional premium billed, within ten (10) days of **our** demand for such premium, **you** may cancel the policy by not paying the additional premium. **We** will notify **you** of the date such cancellation becomes effective and compute and return premium based on the correct premium.

3. In the event **we** discover that additional premium is due when **we** adjust a claim under PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS or PART III - DAMAGE TO YOUR INSURED AUTO, **you** agree that such premium may be deducted from the amount of payment otherwise due under such Parts if such payment is to benefit **you** either directly or indirectly.

Nothing contained in this section will limit **our** right to void this policy for breach of warranty or misrepresentation of any information by **you.**

## PART I - LIABILITY TO OTHERS

Coverage A - Bodily Injury
Coverage B - Property Damage

**We** will pay damages, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, for which an **insured** is legally liable because of an **accident.**

9

**We** will defend any lawsuit for damages which are payable under this Policy or settle any claim for those damages as **we** think appropriate. **We** have no duty to settle or defend any lawsuit or make any additional payments after **we** have paid or offered to pay the Limit of Liability for this coverage.

**Additional Definitions Used in this Part Only:**

When used in PART I - LIABILITY TO OTHERS, "**Insured**" means:

1. **You;**

2. Any additional driver listed on **your** policy but only while driving **your insured auto;**

3. Any other person driving **your insured auto** with **your** permission and within the scope of that permission;

4. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this PART I - LIABILITY TO OTHERS while driving **your insured auto.**

However, the owner or anyone else from whom **you** hire or borrow **your insured auto** is an **insured** with respect to that **auto** only if it is a **trailer** connected to an **insured auto.**

**Additional Payments**

For an **insured**, **we** will pay, in addition to **our** Limit of Liability:

1. interest, on damages not exceeding **our** Limit of Liability, accruing after entry of judgment in any lawsuit **we** defend before **we** have paid or tendered payment of that portion of the judgment which does not exceed **our** Limit of Liability;

10

2. premiums on appeal bonds and attachment bonds required in any lawsuit **we** defend, provided that **we** will not pay the premium for attachment bonds that are more than **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;

3. up to $250 for a bail bond required because of an **accident** or traffic law violation arising out of the use of **your insured auto**, but **we** have no duty to apply for or furnish such a bond;

4. reasonable expenses, except loss of earnings, incurred at **our** request;

5. reasonable expenses, up to $1,000, incurred by an **insured** for immediate medical or surgical relief to others necessary at the time of an **accident** resulting in **bodily injury** covered by this PART I - LIABILITY TO OTHERS provided that such expenses are not due to war;

6. all costs **we** incur in any settlement any claim.

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, AN INSURED WILL NOT HAVE COVERAGE FOR AN ACCIDENT OR LOSS THAT OTHERWISE WOULD BE COVERED UNDER THIS PART I - LIABILITY TO OTHERS.**

Coverage under this PART I and **our** duty to defend does not apply to:

1. **Bodily injury** and **property damage** either expected or caused intentionally by or at the direction of an **insured**.

2. Any liability assumed by an **insured** under any contract or agreement, including liability imposed upon an **insured** by a statute arising from the **insured's** sponsorship of a minor for an operator's license.

11

9. **Property damage** to any property owned by, rented to, being transported by, used by, or in the charge of the **insured**, including any motor vehicle operated or being towed.

10. **Bodily injury** or **property damage** resulting from or caused by the loading or unloading of property with any device other than a hand truck.

11. **Bodily injury** or **property damage** resulting from or caused by the loading or unloading of property with a hand truck before the property is placed in or upon the **insured auto** or after it has been removed from the **insured auto**.

12. **Bodily injury** or **property damage** resulting from anyone who is not **your** employee loading or unloading an **auto**.

13. **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any **pollutants**:

a. That are, or that are contained in any property that is:

1) Being transported or towed by or handled for movement into, onto or from, the **insured auto**;

2) Otherwise being transported by or on behalf of the **insured**; or

3) Being stored, disposed of, treated or processed in or upon the **insured auto**;

b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or

---

Any obligation assumed or expense incurred by any person claiming coverage under this Policy other than for emergency medical and surgical care imperative at the time of the **accident**.

4. Any obligation for which an **insured** or the insurer of that **insured**, even if one does not exist, may be held liable under Workers' Compensation, unemployment compensation, or disability benefits law or any similar law.

5. An **accident** for which any person is insured under nuclear energy liability insurance. This exclusion applies even if the limits of that insurance are exhausted.

6. **Bodily injury** to an employee of an **insured**, or a spouse, child, parent, brother or sister of that employee, arising out of or within the course of employment, except with respect to a domestic employee if benefits are neither paid nor required to be provided under any Workers' Compensation, disability benefits or other similar law. This exclusion applies whether the **insured** may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

7. **Bodily injury** to a fellow employee of an **insured** injured while within the course of their employment, except injuries for which the **insured** is legally liable.

8. **Bodily injury** or **property damage** involving an **auto** while being operated, used or maintained by any person when employed or engaged in the business of selling, repairing, parking, storing, servicing, or while delivering, testing, road testing, parking or storing **autos**, unless the business is **your** business, and it was warranted in **your** application.

Case 2:05-cv-00799-WKW-TC   Document 33-2   Filed 03/26/2008   Page 24 of 27

c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are finally delivered, disposed of or abandoned by the **insured**.

Paragraph a. does not apply to fuels, lubricants, fluids, exhaust gasses or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **insured auto** or its parts, if:

(1) The **pollutants** escape or are discharged, dispersed or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and

(2) The **bodily injury** or **property damage** does not arise out of the operation of any **mobile equipment**.

Paragraphs b. and c. of this exclusion do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:

a. The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **insured auto**; and

b. The discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

14. Any loss, cost or expense arising out of any governmental direction or request that **you** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**.

14

15. **Bodily injury** to **you** or an **insured**.

16. **Bodily injury** or **property damage** arising out of **you** or an **insured** participating in or preparing for an organized race, speed contest or performance contest.

17. **Bodily injury** or **property damage** due to war (declared or undeclared), civil war, insurrection, rebellion, revolution, or any act or condition incident to these.

18. Any obligation for which the United States Government is liable under the Federal Tort Claim Act.

19. **Bodily injury** or **property damage** resulting from the delivery of any liquid into the wrong receptacle or the wrong address, or from the delivery of one liquid in place of another.

20. **Bodily injury** or **property damage** resulting from the explosion or discharge of Class A and B explosives, poisonous gas, liquid gas, compressed gas, radioactive material and all other materials and/or commodities as listed in the Motor Carrier Act of 1980 (49 CFR 173, 172.101, 173.389, 171.8), manufactured, sold, transported, handled or distributed by an **insured**.

21. **Bodily injury** or **property damage** occurring outside any territory or possession of the United States and any province of Canada, or while an **auto** is being transported between their ports.

22. **Bodily injury** or **property damage** **your insured auto** or a **non-owned auto** is attached to a **trailer** with load capacity in excess of two thousand (2,000) pounds if it is not listed in the Declarations and it:

a. is owned by **you** or **your** employee; or

15

b. has been hired or borrowed by **you** or **your** employee for more than 60 consecutive calendar days.

23. **Bodily injury** or **property damage** caused by or through the ownership, use or operation of any **mobile equipment** or other apparatus attached to or pulled by **your insured auto** except while **your insured auto** is in transit on a public roadway.

24. **Bodily injury** or **property damage** arising out of the operation of **your insured auto** by any driver not meeting legal age requirements to operate a vehicle in the **state** shown in the declarations.

## Limit of Liability

Regardless of the number of **insured autos**, separate premiums paid, **insureds**, claims made, vehicles involved or **lawsuits** brought, **we** will pay no more than the Limit of Liability shown for this coverage in the Declarations, subject to the following:

1. **COVERAGE REQUIRED BY FILINGS:**

If **we** are required by any applicable filing which **we** have made on **your** behalf to provide coverage not otherwise provided by this policy under this PART 1 - LIABILITY TO OTHERS, to any person or organization, the coverage provided hereunder for such person shall be the minimum coverage required by law. If **we** are required to make any payment under this policy that would not have been made except for the certification, **you** must reimburse **us**.

2. **COMBINED BODILY INJURY AND PROPERTY DAMAGE LIMITS:**

Subject to Section 1 above, if **your** Declarations indicates that combined **bodily injury** and **property damage** lim-

16

---

its apply, the most **we** will pay for the aggregate of all damages resulting from any one **accident** is the combined liability insurance limit shown in the Declarations.

3. **SEPARATE BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY LIMITS:**

Subject to Section 1 above, if **your** Declarations indicates that Separate **Bodily Injury** Liability and **Property Damage** Liability Limits apply:

a. The **bodily injury** liability limit for "each person" listed on the Declarations page is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, and only the limit for "each person" will apply to the aggregate of claims made for such **bodily injury** and any and all claims derived from such **bodily injury** including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium and wrongful death.

b. Subject to the **bodily injury** liability limit for "each person", the **bodily injury** limit for "each accident" listed on the Declarations Page is the maximum **we** will pay for **bodily injury** sustained by two or more persons in any one **accident**, including all derivative claims which include, but are not limited to, loss of society, loss of companionship, loss of services, loss of consortium and wrongful death.

c. The **property damage** liability limit for "each accident" listed on the Declarations page is the maximum **we** will pay for all **property damage** sustained in any one **accident**.

For the purpose of determining **our** Limit of Liability under sections 1, 2, or 3 above, all **bod-**

17

...ily injury and **property damage** resulting from continuous or repeated exposure to substantially the same conditions shall be considered as resulting from one **accident**.

An **insured auto** and a **trailer** or **trailers** attached thereto shall be deemed to be one **auto** as respects our Limit of Liability.

Any amount payable under PART I - LIABILITY TO OTHERS to or for an injured person will be reduced by any payment made to that person under any UNINSURED MOTORIST COVERAGE, UNDERINSURED MOTORIST PROTECTION OR EXPENSES FOR MEDICAL SERVICES TO INSUREDS coverages of this policy.

**Other Insurance**

Subject to the above, if there is other applicable liability insurance for an **accident** covered by this PART I - LIABILITY TO OTHERS for a **replacement auto**, an additional **auto** or a **non-owned auto** used as a temporary substitute **auto**, coverage under this Policy will be excess to all other applicable insurance.

This coverage is primary when **your insured auto** which is a **trailer** is attached to an **insured auto you** own and is excess while attached to a motor vehicle **you** do not own.

If there is other applicable liability insurance for an **accident** covered by this PART I - LIABILITY TO OTHERS, **we** will pay the proportionate share **our** Limit of Liability bears to the total of all applicable liability limits.

If coverage under more than one policy applies as excess:

1. the total limits of liability under such excess coverages shall not exceed the difference between the limit of liability of the primary coverage and the highest limit of liability of any one of the excess coverages; and

2. the difference between the limit of liability of the primary coverage and the highest limit of liability of any one of the excess coverages shall be referred to as the excess amount; and

3. **we** shall be liable only for that percentage of the excess amount that the Limit of Liability under this PART I - LIABILITY TO OTHERS bears to the total of all limits of liability for coverages applicable excess.

If any applicable insurance other than this policy is issued by **us** and is applicable to a covered **accident**, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

## PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS

**Coverage C - Medical Payments**

If **you** purchase this coverage and it is shown on the Declarations page, **we** will pay **medical expenses** incurred by an **insured** caused by an **accident**.

**Additional Definitions as used in this Part only:**

**"Insured"** means any person **occupying your insured auto** while it is being driven by **you**, anyone with **your** permission and within the scope of that permission.

**"Medical expenses"** means reasonable, necessary and curative medical, surgical, dental, x-ray, ambulance, hospital and funeral services, including the cost of pharmaceuticals, orthopedic and prosthetic devices, incurred within one (1) year of the date of **accident**.

**"Accident"** means a sudden, unexpected and unintended event that causes **bodily injury**.

**EXCLUSIONS - PLEASE READ THE EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, AN INSURED WILL NOT HAVE COVERAGE FOR AN ACCIDENT THAT OTHERWISE WOULD BE COVERED UNDER THIS POLICY.**

This coverage does not apply for **bodily injury** to any person:

1. Occurring during the course of employment if Workers' Compensation coverage should apply.

2. Caused by war (declared or undeclared), civil war, insurrection, rebellion, revolution, nuclear reaction, radiation or radioactive contamination, or any consequence of any of these.

3. Caused while the **insured** is committing or attempting to commit a felony, or while the **insured** is involved in an illegal occupation. This exclusion does not apply when the felony is solely a violation of a Motor Vehicle Law.

4. Caused by the operation of **your insured auto** by any driver not meeting legal age requirements to operate a vehicle in the **state** shown in the declarations.

5. Sustained while **your insured auto** is driven in or preparing for any prearranged or organized race, speed contest or performance contest.

6. Sustained by any person while **occupying your insured auto** while it is being used or maintained by a person when employed or engaged in the business of selling, repairing, parking, storing, servicing, delivering or while testing, road testing, parking or storing **autos**.

7. To any person entitled to receive similar services from the United States Government or its military services.

20

8. Sustained in any **accident** which occurs outside any **state**.

9. Sustained while using or **occupying** a **non-owned auto** or a temporary substitute **auto**.

**Limit of Liability**

**Our** Limit of Liability for payments provided under this PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS for covered **medical expenses** incurred by one or more persons in any one **accident** shall not exceed the amount stated in the Declarations for each **accident**. Regardless of the number of **insured autos**, premiums paid, **insureds** injured, claims made, policies applicable, or vehicles involved in any one **accident, we** shall pay no more than the Limit of Liability shown for this coverage on the Declarations page for any one **accident**.

The limit for funeral expenses shall not exceed $1,500 per person, subject to the maximum per accident limit of liability listed on the Declarations page for this coverage.

**We** will not be liable under this Policy for any **medical expense** paid or payable under the provisions of any:

1. Workers' Compensation or disability benefits law or any similar law; or

2. State No-Fault Law requiring personal injury protection coverage; or

3. premises insurance providing coverage for medical expenses; or

4. individual, blanket, or group accident, disability or hospitalization; or

5. medical, surgical, hospital or funeral services, benefit or reimbursement plan.

Any amount paid or payable under PART I - LIABILITY TO OTHERS or the UNINSURED

21

MOTORIST COVERAGE OR UNDERINSURED MOTORIST COVERAGE of this policy shall be deducted from the amounts payable under this PART II if the **insured** has been fully compensated for his/her injuries.

## Other Insurance

If there is other applicable medical payment insurance for **medical expenses** covered by this PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS, **we** shall pay the proportionate share **our** Limit of Liability bears to the total of all applicable medical payments limits. HOWEVER, COVERAGE AFFORDED UNDER PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS OTHER THAN **YOU** OR A **RELATIVE** IS EXCESS OVER SUCH OTHER APPLICABLE MEDICAL PAYMENT INSURANCE, AND IS THEN AFFORDED ONLY IN THE AMOUNT BY WHICH THE LIMIT OF LIABILITY UNDER THIS PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS EXCEEDS THE LIMIT OF LIABILITY OF OTHER MEDICAL PAYMENTS INSURANCE AVAILABLE TO SUCH PERSON.

If any applicable insurance other than this policy is issued by **us**, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

## PART III - DAMAGE TO YOUR AUTO

### Coverage D - Comprehensive

If **you** pay a specific premium for Comprehensive coverage, as shown in the Declarations, **we** will pay for **loss** to **your insured auto**, less any applicable deductible, caused by means other than are covered under **Coverage E - Collision.** Any deductible amount shall apply separately to each **loss.**

Any **loss** caused by missiles, falling objects, fire, theft, collision with an animal or accidental glass breakage shall be deemed a **Comprehensive loss.**

### Coverage E - Collision

If **you** pay a specific premium for **Collision** coverage, as shown in the Declarations, **we** will pay for **loss** to **your insured auto**, less any applicable deductible, when it collides with another object or overturns. Any deductible amount shall apply separately to each **loss.**

### Coverage F - Fire and Theft with Combined Additional Coverage (CAC)

If **you** pay a specific premium for Fire and Theft with **Combined Additional Coverage (CAC)** as shown in the Declarations, **we** will pay for **loss**, less any applicable deductibles, caused by:

1. **fire;**

2. **theft;**

3. windstorms;

4. hail;

5. earthquakes;

6. explosions;

7. the forced landing or falling of any aircraft or its parts or equipment;

8. flood or rising waters;

9. malicious mischief or vandalism;

10. external discharge or leakage of water except **loss** resulting from rain, snow, or sleet whether or not wind driven; or

11. Collision with a bird or animal.

No **losses** other than those specifically described above will be covered under the terms of this Policy. Any deductible will apply separately to each **loss.**

**Additional definitions used in this Part only:**

1. **"Fire"** means:

   a. fire or lightning, or

   b. smoke or smudge due to a sudden, unusual, and faulty operation of any fixed heating equipment serving the premises on which the **insured auto** is located, or

   c. the stranding, sinking, burning, collision, or derailment of any conveyance in or upon which the **insured auto** is being transported.

2. **"Theft"** means any theft, larceny, robbery, or pilferage.

3. **"Your insured auto"** means any **auto** described on the Declarations page, including any permanently attached equipment included in the Limit of Liability shown on the Declarations or by endorsement attached to this Policy, or any **replacement auto**, if the **auto** being replaced previously had DAMAGE TO YOUR AUTO COVERAGE and **we** are notified within 30 days of acquisition of the **replacement auto.**

**EXCLUSIONS - PLEASE READ THE EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, YOU WILL NOT HAVE COVERAGE FOR A LOSS THAT OTHERWISE WOULD BE COVERED UNDER THIS POLICY.**

This coverage does not apply to **loss:**

1. Caused by war (declared or undeclared), any warlike action, any action taken to defend against an actual or expected attack, civil war or commotion, insurrection, rebellion, revolution, or nuclear contamination, regardless of any other cause or event that contributes concurrently or in any sequence to the **loss.**

24

2. To any sound equipment, video equipment or transmitting equipment permanently installed in **your insured auto,** or to tapes, records, or similar items used with sound equipment.

3. To radar detectors.

4. To camper units, pickup covers, caps or shells which are not permanently installed in **your insured auto.**

5. To tarpaulins, binders, chains, or any other cargo securing devices.

6. Resulting from manufacturer's defects, wear and tear, freezing, mechanical or electrical breakdown or failure. But, coverage does apply if the damage is the result of other **loss** covered by the Policy.

7. To **your insured auto** when it is in the care, custody or control of any person for the purpose of selling it.

8. To wearing apparel, tools, or personal effects.

9. While **your insured auto** is used in any illicit trade or transportation.

10. Due to use of **your insured auto** for transportation of any explosive substance, flammable liquid, or similarly hazardous material other than substances transported for common household usage.

11. Caused by **you** or an **insured** participating in or preparing for an organized race, speed contest or performance contest.

12. While **your insured auto** is subject to any bailment, lease, conditional sale, mortgage or other encumbrance not specifically declared and described on the Declarations.

25

Due to **theft** or conversion of **your insured auto**:

a. by **you**, a **relative** or a resident of **your** household or an employee;

b. prior to its delivery to **you**; or

c. while it is in the care, custody or control of anyone for the purpose of selling **your insured auto**.

14. To **your insured auto** while in anyone else's possession under a written trailer exchange agreement, provided that this exclusion shall not apply to a loss payee. If **we** pay the loss payee, **you** must reimburse **us** for payment.

15. To any **non-owned auto** or temporary substitute **auto**.

16. To any **trailer**, unless a premium has been paid for **DAMAGE TO YOUR AUTO COVERAGE** for the **trailer** involved in the **loss**.

**Limit of Liability**

The most **we** will pay for **loss** to **your insured auto** is the least of:

1. the **actual cash** value of the stolen or damaged property at the time of **loss** reduced by the applicable deductible;

2. the amount necessary to repair or replace the property with other of like kind and quality reduced by the applicable deductible and subject to any other endorsement or policy provisions;

3. the applicable Limit of Liability shown in the Declarations or in the endorsements to this policy.

4. the amount necessary to repair or replace with new property, less any applicable depreciation and deductible.

When **we** determine **our** payment for **loss** to **your insured auto**, any salvage value of **your insured auto** as a result of **loss** may at **our** option be deducted from 1, 2, 3 or 4 above. **We** pay the **actual cash value of your insured auto** or the limit of liability as stated within the policy, less the deductible, **we** are entitled to all salvage.

A separate deductible applies to each **insured auto** involved in the **loss**.

If **we** repair the property, **we** shall not be responsible for any diminution in value of the property caused by the **loss**. If repair or replacement of damaged property increases the overall value of **your insured auto**, **we** may deduct this amount from the repair cost.

If the Limit of Liability shown on the Declarations for the **insured auto** involved in the **loss** is less than 90% of the **actual cash value** at the time of **loss**, **you** will share with **us** in the cost of repair or replacement as follows:

1. **We** will pay the same proportion of the **loss** which the Limit of Liability shown in the Declarations or in the endorsements to this policy for **your insured auto** involved in the **loss** bears to the **actual cash value of your insured auto** at the time of **loss**.

2. **We** will reduce the amount of **loss** by the appropriate deductible shown in the Declarations prior to calculating the proportionate amount **we** will pay.

**No Benefit to Bailee**

These coverages shall not directly or indirectly benefit any carrier or other bailee for hire liable for **loss** to **your insured auto**.

**Appraisal**

If **we** cannot agree with **you** on the amount of **your loss**, then **you** or **we** may demand an appraisal of the **loss**. Each party shall appoint a competent and disinterested appraiser. If the

appraisers agree on the amount of the **loss**, they shall submit a written report to **us** and this shall be deemed to be the amount of the **loss**.

If the appraisers cannot agree within a reasonable time, they shall then choose a competent, impartial umpire, provided that if they cannot agree on an umpire within fifteen (15) days, either **you** or **we** may petition a judge of a court having jurisdiction to choose an umpire. The disagreement of the appraisers shall then be submitted to the umpire. Subject to the provisions of the Policy, a written agreement signed by two of these three will then be the amount of the **loss**.

**You** must pay **your** fees and expenses and those of **your** appraiser. **We** will pay **our** fees and expenses and those of **our** appraiser. **We** shall share evenly with **you**;

1. payment of the umpire; and

2. all other expenses of the appraisal.

By agreeing to appraisal, **we** do not waive any of **our** rights under any other part of this Policy, including **our** right to deny the claim.

**Payment of Loss**

**We** may pay the **loss** in money or repair or replace the damaged or stolen property. **We** may, at any time before the **loss** is paid or the property is replaced, return, at **our** expense, any stolen property either to **you** or to the address shown on the 'declarations page, with payment for the resulting damage less any applicable deductibles. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

**We** may make payment for a **loss** to **you** or the owner of the property. Payment for a **loss** is required only if **you** have fully complied with the terms of this Policy.

---

**Other Insurance**

If there is other applicable insurance on a **loss** covered by this PART III - DAMAGE TO YOUR AUTO, **we** will pay the proportionate share our Limit of Liability bears to the total limits of all applicable similar insurance.

**PART IV - GENERAL PROVISIONS**

1. **Policy Period**

Subject to other provisions in the policy this Policy applies only to **accidents**, **losses** and occurrences during the Policy period shown in the Declarations.

2. **Changes**

This Policy with the Declarations includes all the agreements between **you** and **us** relating to this insurance. No change or waiver may be effected except by endorsement issued by **us**. It is **your** responsibility to notify **us** immediately of any changes to drivers or vehicles.

3. **Two or More Autos Insured**

With respect to any **accident** or occurrence to which this and any other Policy issued to **you** by **us** applies, the total limit of **our** liability under all the Policies shall not exceed the highest applicable Limit of Liability under any one Policy.

4. **Suit Against Us**

**We** may not be sued unless there is full compliance by **you** or an **insured** with all the terms of this Policy. **We** may not be sued under the PART I - LIABILITY TO OTHERS coverage until the obligation of an **insured** to pay is finally determined by judgment against the **insured** after actual trial or by written agreement of the **insured**, the claimant, and **us**.

## 5. Our Recovery Rights

In the event of any payment under this Policy, **we** are entitled to all the rights of recovery of the person or organization to whom payment was made. That person or organization must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after **loss** or **accident** to harm **our** rights.

When a person has been paid damages by **us** under this Policy and also recovers from another, the amount recovered from the other shall be held in trust for **us** and reimbursed to **us** to the extent of **our** payment, provided that the person to or on behalf of whom such payment is made is fully compensated for their **loss**.

In the event recovery has already been made from the responsible party, any rights to recovery by the person(s) claiming coverage under this policy no longer exist.

## 6. Assignment

Interest in this Policy may not be assigned without **our** written consent. If the Policyholder named in the Declarations is a person and that person dies, the Policy will cover:

a. the survivor;

b. the legal representative of the deceased person while acting within the scope of duty of a legal representative; and

c. any person having proper custody of **your insured auto** until a legal representative is appointed, but in no event for more than thirty (30) days after the date of death.

## 7. Waiver

Notice to any agent or knowledge possessed by any agent or other person shall not change or effect a waiver on any portion of this Policy nor stop **us** from exercising any of **our** rights under this Policy.

## 8. Bankruptcy

**We** are not relieved of any obligation under this Policy because of the bankruptcy or insolvency of an **insured**.

## 9. Inspection and Audit

**We** shall have the right to inspect **your** property and operations at anytime. This includes, but is not limited to, the right to inspect and audit the maintenance of **your autos** covered hereunder, who **your** drivers are and what their driving records are, and **your** radius of operations. In doing so, **we** do not warrant that property or operations are safe, healthful, or are in compliance with law, rule or regulation.

**We** shall also have the right to examine and audit **your** books and records at any time during the Policy period and extensions of that period and within three (3) years after termination of the Policy as far as they relate to the subject matter of this insurance.

## 10. Fraud and Misrepresentation

This Policy shall be void if **you** or **insured** has concealed or misrepresented any material fact, or in case of fraud or attempted fraud touching any matter regarding this Policy, whether before or after a **loss** or **accident**.

6. If this policy is canceled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, we will return 90% of the calculated pro-rata refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

## NONRENEWAL OF THIS POLICY

1. We may elect not to renew or continue this policy by mailing or delivering to you written notice before the end of the policy period including the actual reason for nonrenewal. If we fail to provide notice within 30 days of the end of the policy period, the policy will continue in effect until 30 days from the date of the notice. You will be responsible for any premiums due while the policy is in effect. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

2. If we fail to mail or deliver proper notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

Secretary                    President

33

11. **Terms of Policy Conformed to Statutes**

Terms of this Policy which are in conflict with the statutes of the state in which this Policy is issued are hereby amended to conform to the statutes.

## CANCELLATION OF THIS POLICY

1. You may cancel this policy by mailing or delivering to us advance written notice of cancellation or by not paying a premium installment when it comes due. The cancellation date can be no earlier than 12:01 a.m. on the day after your written request is postmarked.

2. If you cancel this policy by not paying a premium installment when it is due, we will provide you written notice of cancellation, at your last mailing address known to us, at least 10 days before the effective date of cancellation.

3. We may cancel this policy by mailing or delivering to you and your representative in charge of the subject of the insurance, if applicable, written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to us, at least 45 days before the effective date of cancellation, except as provided below.

4. We will also mail to any lienholder, pledgee or other person shown in this policy with a financial interest in your insured auto, at their last mailing address known to us, the same written notice of cancellation that we provide to you.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

32

## INDEX OF ENDORSEMENTS

| Form No./Description | Page |
| --- | --- |
| **1197 (08-93)** | |
| Amendatory Cancellation Endorsement | 35 |
| **1349 (12-96)** | |
| Alabama Uninsured Motorist Coverage Endorsement | 35 |
| **2000A (12-96)** | |
| Uninsured Motorists Insurance | 36 |
| **3098 (12-96)** | |
| Split Uninsured Motorists Coverage Limits | 40 |
| **3394 (12-96)** | |
| Alabama Changes | 41 |

Form No. 1197 (08-93)

## AMENDATORY CANCELLATION ENDORSEMENT

If this policy is cancelled, **we** will send you (the first named insured) any premium refund due. If **we** cancel, the refund will be pro-rata. This means that unearned premium to be returned will be in the same proportion to total policy premium as the remaining policy term (after date of cancellation) bears to the total policy term. Unearned premium will be calculated on a daily basis.

If **you** cancel, during the policy period, **we** will return ninety percent (90%) of the pro-rata unearned premium for the remainder of the policy term after the effective date of cancellation. Unearned premium will be calculated on a daily basis.

If the return premium is not refunded upon notice of cancellation, the premium will be refunded within a reasonable time after the date the cancellation takes effect. However, making or offering to make the refund is not a condition of cancellation.

**All other parts of this policy remain unchanged.**

Form No. 1349 (12-96)

## ALABAMA UNINSURED MOTORIST COVERAGE ENDORSEMENT

If **you** purchased Uninsured Motorist Coverage the following terms and conditions are added to this section of **your** policy:

The term **uninsured auto** shall include, but is not limited to, **autos** with respect to which neither the owner nor the operator carries **bodily injury** liability insurance, any applicable policy liability limits for **bodily injury** are

below the minimum required by Alabama statute, the insurer becomes insolvent after the policy is issued so there is no insurance applicable to or at the time of the accident, or the sum of the limits of liability under all bodily injury liability bonds or policies available to an injured person after an accident is less than the coverage which the insured person is legally entitled to recover.

This coverage does not apply if you reject it on your original application or at any time thereafter.

All other terms and conditions remain unchanged.

Form No. 2000A (12/96)

## UNINSURED MOTORISTS INSURANCE

We will pay damages for bodily injury which an insured is legally entitled to recover from the owner or operator of an uninsured auto. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured auto.

If the limits of liability for this insurance are in excess of the amounts required by the law of the state in which the insured auto is principally garaged, we will pay only after limits under all liability bonds or policies available have been used up by payments or judgments, or a tentative settlement has been made between an insured and we the insurer of an underinsured auto and we have been given prompt written notice of the settlement and have advanced payment to the insured in an amount equal to the tentative settlement within thirty (30) days of notification.

Determination whether an insured is legally entitled to recover damages or as to the amount of damages shall be made by agreement between the insured and us. If no agreement is reached, the decision will be made by arbitration.

If suit is brought to determine legal liability or damages without our written consent, we are not bound by any resulting judgment unless we received reasonable notice of the suit resulting in the judgment and had a reasonable opportunity to protect our interest in the suit. If reasonable notice has not been given to us, we have the option to accept the judgment in the suit as binding on us.

### Additional Definitions

As used in this endorsement:

1. Insured means you or a relative, any other person occupying an insured auto, and any person for damages that person is entitled to recover because of bodily injury to you, a relative or another occupant of your insured auto. But no person shall be considered an insured if that person uses your insured auto without your express permission.

2. Auto means a land motor vehicle or a trailer, but does not mean a vehicle operated on rails or crawler treads, a vehicle which is a farm type tractor or equipment designed for use principally off public roads, while not on public roads, or a vehicle located for use as a residence or premises.

3. Occupying means in, on, getting into, off or out of.

4. Relative means if you are an individual, a person living in your household related to you by blood, marriage or adoption, including a ward or foster child.

5. Uninsured auto means an auto which is not insured by a bodily injury liability policy or bond at the time of the accident, or insured by a liability policy or bond at the time of the accident which provides bodily injury liability limits less

than the minimum **bodily injury** liability limits required by the financial responsibility law of the state in which the **auto** is principally garaged. This coverage only extends coverage up to the required limits of the state in which **your insured auto** is principally garaged.

**Uninsured auto** also includes a hit-and-run vehicle whose operator or owner is unknown and which strikes an **insured**, an auto which an **insured** is **occupying**, or the **insured auto**.

**Uninsured auto** does not mean a vehicle owned by or furnished or available for the regular use of **you** or a **relative**, owned or operated by a self-insurer as contemplated by any financial responsibility law, motor carrier law or similar law, or owned by a governmental agency.

## Exclusions

**We** do not cover **bodily injury** sustained by a person if that person or the legal representative of that person makes a settlement without **our** written consent or while that person is **occupying** an **auto** driven without the owner's permission.

## Limits of Liability

Regardless of the number of **insured autos**, **insureds**, premiums paid, claims, or **autos** involved in the **accident**, the most **we** will pay for all damages resulting from any one **accident** is the limit of Uninsured Motorists Insurance shown in the Declarations.

If there is more than one **insured auto**, **our** limit of insurance for any one **accident** is the sum of the limits applicable to each **insured auto** subject to a maximum of three (3) **insured autos**.

No person may receive duplicate payments for the same elements of **loss** under this form and any liability coverage form or **Part II - Expenses for Medical Services to Insureds.**

38

**We** will not make a duplicate payment under this coverage for any element of **loss** for which payment has been made by or for anyone who is legally responsible.

**We** will not pay for any element of **loss** if a person is entitled to receive payment for the same element of **loss** under any workers' compensation, disability benefits or similar law.

This coverage does not apply to punitive or exemplary damages. However, this exclusion does not apply to punitive or exemplary damages which are awarded in a wrongful death action.

## Other Insurance

If there is other similar insurance on a **loss** covered by this endorsement, **we** will pay **our** proportionate share as **our** limits of liability bear to the total limits of liability of all applicable similar insurance. If this policy and any other policy providing similar insurance apply to the same **accident**, the maximum limit of liability under all policies shall be the highest limit of liability under any one policy. Any insurance for an **auto you** do not own is excess over any applicable similar insurance.

## Proof of Claim

Each person making claim under this coverage must give **us** full details of their injuries and treatment. Proof of claim shall be submitted on the forms unless **we** fail to provide them within fifteen (15) days after notice of the claim.

## Arbitration

If an **insured** and **we** do not agree that the **insured** is legally entitled to recover damages from the owner or operator of an **uninsured auto**, or as to the amount of payment under this endorsement, either that **insured** or **we** may demand that the issue be **determined by arbitration**. In that event, the **insured** will select an arbitrator and **we** will select another. The two arbitrators will select a third. If they can not agree on the third arbitrator within thirty (30) days, the judge of

39

a court having jurisdiction will appoint the third arbitrator. The **insured** will pay the arbitrator selected by the **insured**. **We** will pay the arbitrator or **we** select. The expense of the third arbitrator and all other expenses of arbitration will be shared equally.

Arbitration will take place in the county where the **insured** lives. Local court rules governing procedure and evidence will apply.

The decision in writing of any two arbitrators will be binding subject to the terms of this insurance.

Form No. 3098 (12-96)

## SPLIT UNINSURED MOTORISTS COVERAGE LIMITS

This Endorsement Changes the Policy. Please Read It Carefully.

This endorsement modifies insurance provided under the following:

UNINSURED MOTORISTS COVERAGE

Regardless of the number of **insured autos**, **insureds**, premiums paid, claims made or **autos** involved in the **accident**, the limit of liability is as follows:

a) the **bodily injury** liability limit for each person listed on the Declarations page is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, and only the limit for each person will apply to the aggregate of claims made for such **bodily injury** and any and all claims derived from such **bodily injury** including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

b) subject to the **bodily injury** liability limit for each person, the **bodily injury** limit

listed on the Declarations page for each **accident** is the maximum **we** will pay for **bodily injury** sustained by two or more persons in any one **accident**, including all derivative claims which include, but are not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

c) the **property damage** liability limit listed on the Declarations page for each **accident** is the maximum **we** will pay for all **property damage** sustained in any one **accident**.

Form No. 3394 (12-96)

## ALABAMA CHANGES

This endorsement changes the policy. Please read it carefully.

**Part I - Liability To Others** - paragraph (1) is amended to read:

**We** will pay damages for which an **insured** is legally liable because of an **accident**.

**Part IV - General Provisions**

Item (5) is amended to read as follows:

In the event of any payment under this policy, **we** are entitled to all rights of recovery of the **insured** or organization to whom payment was made only after that person has been fully compensated for damages. That person or organization must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after **loss** or **accident** to harm **our** rights.

RECEIVED

JUL 1 6 2007

PROGRESSIVE CLAIMS
BIRMINGHAM, AL

*1781 297 01*



EXHIBIT F



*(handwritten)* (6022)- 1659
2/6/08

256 Honeysuckle Road
Brightleaf Court, Suite 6
Dothan, Alabama 36305
Phone (334) 712-6459
Fax (334) 712-0902
www.carrallison.com

Eric M. Wade
ewade@carrallison.com

1 February 2008

*Delivered via U.S. Mail*

R. Larry Bradford, Esq.
Bradford & Sears, P.C.
2020 Canyon Road, Ste. 100
Birmingham, AL 35216

RE:     **Jerome Ross v. Tony Lester d/b/a Lester Logging**
        **DOI:**        **June 21, 2005**
        *Response to subpoena*

Dear Larry:

Please find enclosed with this letter a copy of the documents currently in my client's possession that relate to your subpoena and are not privileged. I will be happy to forward any additional documents that I receive to your office.

Regarding the workers' compensation case, the Plaintiff has failed to perfect service on my client. Therefore, my activity on this file has remained at a very minimum. However, I have filed a motion to dismiss the workers' compensation claim for lack of prosecution. Once these matters have been resolved by the circuit court, I will probably move forward with discovery in this case, and I will be happy to share my discovery with you as well.

The employer and its workers' compensation insurer do have a subrogation interest in regards to this accident. However, I will have to verify that amount. It is my understanding that the Plaintiff's attorney has already reached a settlement for $20,000.00 with the wrongdoer's (Brandon Neal) liability carrier, but I will have to verify that information also. It is my understanding that Progressive was also Mr. Neal's insurer. We would not have a subrogation interest in your case since it is based on a UIM claim.

If I can be of further assistance or if you wish to discuss this case further, please do not hesitate to contact me.

Best regards.

**EXHIBIT**
**F**

Page 1 of 2

*(handwritten)* enclosed all docs - in letter

Birmingham    Dothan    Florence    Gulfport    Jasper    Mobile    USLAW

Sincerely,

ERIC M. WADE

EMW

cc:     subpoenaed documents to Progressive

# EXHIBIT G

*PROGRESSIVE*

May 29, 2007

<u>VIA FACSIMILE - 334 335 5170</u>
Law Office of Jon M. Folmar
P O Box 642
Luverne, AL 36049

RE:    Our Insured:        Tony Lester
       Claim Number:       056114386
       Date of Loss:       June 21, 2005
       Your Client:        Jerome Ross

Dear Mr. Folmar:

In regards to the above captioned claim, I would like to take this opportunity to follow up on our telephone conversation of this date and your policy limits demand to settle the Underinsured Motorist claim for your client, Jerome Ross.

Please consider this as notice that Progressive respectfully declines your demand, but be advised that we are very interested in resolving this matter without further delay.

As we discussed, per our investigation your client's wage loss is not due to this accident as he was dismissed from his job for non-accident related issues. Furthermore, in order to consider any future surgery, we will need to get written confirmation from his treating physician that this surgery is needed and that it is related to the above referenced accident and not due to injuries suffered in other accidents your client was involved in.

At this time, I am prepared to offer to **$10,200.00** to settle this claim. I feel that this offer is fair in light of the nature and extent of your client's injuries and actual accrued specials for these injuries. I would appreciate you taking this offer to your client for his thoughtful consideration in hopes that we may conclude this matter in a prompt and amicable fashion.

I appreciate your cooperation and am looking forward to hearing from you soon. You may reach me Monday through Friday from 7:30 AM to 4:30 PM at 334 244-4517.

Sincerely,

*Barbara Lanham*

Barbara Lanham
Casualty Specialist
Progressive Specialty Insurance Co.
4719 Woodmere Boulevard
Montgomery, AL   36106

/bl

EXHIBIT
G